## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                    No. CR 11-2002 JB

RAFAEL GOXCON-CHAGAL and
MARIA VIANEY MEDINA-COPETE,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Rafael Goxcon-Chagal's Objections to Government's Voir Dire, filed August 2, 2012 (Doc. 87)("Objections").  The primary issues are: (i) whether the Court should modify or disallow some portions of Plaintiff United States of America's proposed voir dire as confusing or misleading; and (ii) whether Court should disallow some of the United States' proposed voir dire questions on the basis that they misstate the applicable law.  The Court will overrule some of the objections as moot, given that the United States has agreed to modify its questions, and will overrule the remaining objections.  Regarding Question Nos. 2 and 4, the United States has agreed to modify its questions to accommodate Defendant Rafael Goxcon-Chagal's concerns.  As for the remaining questions, they are proper voir dire questions that will not confuse or mislead the jury, and that do not misstate the governing law.  The Court, as a general matter, is inclined to give the parties significant leeway during voir dire.

## PROCEDURAL BACKGROUND

At the Court's pretrial conference on July 30, 2012, the Court informed the parties that it generally asks the jurors a variety of questions before letting the attorneys ask the jurors questions,

because this practice helps get the jurors talking.  See Transcript of Hearing at 35:20-36:14 (taken July 30, 2012)(Court)("Tr.").[1]  The Court asked the parties how long they would need during voir dire to ask their own questions of the jurors once the Court had finished asking some preliminary questions.  The United States related that it would spend approximately half an hour conducting voir dire.  See Tr. at 36:19-21 (Stanford).  Defendant Maria Vianey Medina-Copete noted that she would use about the same amount of time as the United States in conducting her voir dire.  See Tr. at 36:23-37:7 (Riggs).  Goxcon-Chagal stated that his voir dire would last a maximum of a half an hour.  See Tr. at 39:6-12 (Gandert).  On a few matters, including jurors' ability to speak Spanish and the religious matters surrounding Santa Muerte,[2] the parties agreed that the better practice would be to have the Court ask questions of the jurors on those topics.  See Tr. at 36:23-39:3 (Riggs, Court, Stanford).  The Court asked Medina-Copete to submit appropriate questions for the Court to ask by letter to the Court and to opposing counsel, to which the United States could respond if it had any concerns about the questions.  See Tr. at 38:21-39:3 (Court, Riggs).[3]

On August 1, 2012, the United States filed its Government's Voir Dire.  See Doc. 82 ("Proposed Voir Dire").  The Proposed Voir Dire is not a request that the Court ask the listed questions, but rather a request "that the Court permit the United States to include the following

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[2]In its Memorandum Opinion and Order, filed August 5, 2012 (Doc. 96)("MOO"), the Court stated that it would permit the United States to present an expert witness who would testify about the significance of the presence of materials relating to Santa Muerte, who some characterize as a so-called narco saint that individuals in the narcotics trade honor, in the Defendants' vehicle upon their arrest.  See MOO at 1-2 & n.1.

[3]Medina-Copete has submitted a list of questions with the Court on these topics.  See Letter from Joseph N. Riggs III to the Court at 2-3 (dated August 1, 2012), filed August 1, 2012 (Doc. 85).

questions in its examination of prospective jurors."  Proposed Voir Dire at 1.  Question No. 2

provides the following statement:

> The role of the juror is to listen to all of the evidence and decide the case based on
> the facts.  Your job is to be fair, but not more than fair, to all parties.  Is there anyone
> who has any problem with those roles so that you could not be fair and impartial in
> this case?

Proposed Voir Dire ¶ 2, at 1.  Question No. 4 states:

> Law enforcement officers routinely and legally conduct consensual searches of
> motor vehicles on the roads of this State.  Consensual in this sense means the driver
> and passenger agree to the search.  These activities are part of law enforcement's
> drug interception activities.  Do any of you have any concerns about this law
> enforcement technique?

Proposed Voir Dire ¶ 4, at 2.  Question No. 29 provides:

> As you know, the burden of proof in this case is on the government.  The law
> requires us to prove that each defendant is guilty beyond a reasonable doubt; that is,
> a doubt based on reason and common sense.  Does anyone feel that the government
> should carry a heavier burden, such as proof beyond all doubt, or proof beyond a
> shadow of a doubt?

Proposed Voir Dire ¶ 29, at 7.  Question No. 30 states:

> Is there anyone who believes that they would hold the government to a standard of
> evidence that could not possibly ever be met?  For example, does any juror believe
> that the government should prove a case the way it was done on a fictional television
> show, such as <u>Crime Scene Investigation</u> or <u>Law and Order</u>?  Does anyone believe
> that the technology available on such programs is also available in real life?

Proposed Voir Dire ¶ 30, at 7.  Question No. 31 provides: "What are some types of evidence you

expect to see in a trial involving drug trafficking?"  Proposed Voir Dire ¶ 31, at 7.  Question No. 36

states: "If the government established the elements of each crime charged and met its burden of

proof, would anybody have a problem holding each defendant responsible for his actions and

returning a verdict of guilty?"  Proposed Voir Dire ¶ 36, at 8.  Question No. 37 provides: "If you

heard the evidence and you felt one of the defendants was guilty, but you had a slight doubt but not

a reasonable doubt of his guilt, would you be able to hold that defendant responsible for that crime?"
Proposed Voir Dire ¶ 37, at 8 (emphasis omitted).

On August 2, 2012, Goxcon-Chagal filed his Objections.  See Doc. 87.  He asserts that the
phrase in Question No. 2 stating "but not more than fair" should "be omitted as it is confusing to the
jury and does not mean anything."  Objections at 1 (emphasis omitted).  He objects to Question No.
4 on the basis that it "calls for a legal conclusion and also indicates that consensual searches are in
fact actually done consensually when in reality the majority of the individuals who are searched
consent to the search because they are intimidated by law enforcement."  Objections at 1.  Goxcon-
Chagal asserts that Question No. 29 "is an incomplete statement of the presumption of innocense
[sic], burden of proof and reasonable doubt."  Objections at 2.  "Defense counsel requests that the
entire second paragraph of the Tenth Circuit Pattern Criminal Jury Instruction No. 1.05 be read in
its entirety rather than a portion being taken out of context."  Objections at 2.  He objects to
Question No. 30, which he asserts "is an attempt by the prosecution to exclude possible law
enforcement deficiencies in the way this investigation was conducted" and which he finds
objectionable, because "[t]elevision shows are not part of this case."  Objections at 2.  Goxcon-
Chagal objects to Question No. 31, which he asserts "calls for speculation by the jury as to what type
of evidence will be expected."  Objections at 2.  He asserts that Question No. 36 is "a one-sided
statement of the law" and asks the Court to substitute the following question: "If the government
does not establish the elements of the crime charged and meet its burden of proof, would anybody
have a problem finding the defendants not guilty."  Objections at 2 (emphasis omitted).  He also
asserts that Question No. 37 "is a one-sided statement of the law" and asks the Court to substitute
an alternative question: "If you heard the evidence and felt the defendants might be guilty but had
a reasonable doubt as to their guilt, would you be able to find them not guilty?"  Objections at 2

(emphasis omitted).

On August 3, 2012, the United States filed its Government's Reply to Defendant's Objections to Government's Voir Dire.  See Doc. 94 ("Reply").  The United States "does not object to the requested omission of the phrase 'but not more than fair'" from Question No. 2.  Reply at 1 (emphasis omitted).  The United States does "not object to the requested omission of the specified excerpt from" Question No. 4.  Reply at 1.  The United States asserts that Question No. 29 "is not an incomplete statement" and that Goxcon-Chagal improperly requests that "the entire second paragraph of the Tenth Circuit Pattern Criminal Jury Instructions No. 1.05 be read in its entirety." Reply at 1.  The United States emphasizes that its Question No. 29 "is not whether or not [the jurors] understand the definition of reasonable doubt, it is whether they believe that the Government should have a higher burden."  Reply at 1-2.  Regarding Question No. 30, the United States acknowledges that "[t]elevision shows are not part of this case," but argues that "it is common knowledge that television shows such as Crime Scene Investigation and Law and Order have a profound effect on the public's perception of evidence in a criminal trial."  Reply at 2.  The United States contends that Question No. 31 "calls for no speculation by the jury" and is instead "designed to provide insight into the expectations of potential jurors" to probe for "unreasonable expectations of evidence to be presented, such as whether DNA should be expected."  Reply at 2.  Regarding Question No. 36, the United States asserts that the question is proper, because "[t]here are individuals in society who may well feel guilty or unable to render a guilty verdict even if the Government has met its burden." Reply at 3.  Regarding Question No. 37, the United States asserts that it is "a natural continuation of question 36 and seeks to identify specific ethical biases by certain types of potential jurors." Reply at 3.

## LAW REGARDING JURY SELECTION

"To be meaningful, the adequacy of voir dire examination must allow a party an opportunity to make reasonably intelligent use of peremptory challenges and challenges for cause." Lowery v. City of Albuquerque, No. 09-0457, 2012 WL 1372273, at *4 (D.N.M. Apr. 11, 2012)(Browning, J.)(citing United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977)). "[V]oir dire is within the sound discretion of the trial court, and the court's exercise of that discretion will not be disturbed, absent a clear showing of abuse." United States v. Whitt, 718 F.2d 1494, 1497 (10th Cir. 1983). See United States v. Gibbons, 607 F.2d 1320, 1330 (10th Cir. 1979)("The trial court has broad discretion in conducting the voir dire examination."). "[D]istrict courts have broad discretion in fashioning the method of exercising peremptory challenges, and the jury selection procedure in general." United States v. Morris, 623 F.2d 145, 151 (10th Cir. 1980).

## ANALYSIS

The Court will overrule in part some of the objections as moot and will overrule the remaining objections. Regarding Question Nos. 2 and 4, the United States has agreed to modify its questions to accommodate Goxcon-Chagal's concerns. As for the remaining questions, they are proper voir dire questions that will not confuse or mislead the jury, and that do not misstate the governing law. The Court, as a general matter, is inclined to give the parties significant leeway during voir dire.

## I.     QUESTION NOS. 2 AND 4.

Goxcon-Chagal asserts that the phrase in Question No. 2 stating "but not more than fair" should "be omitted as it is confusing to the jury and does not mean anything." Objections at 1 (emphasis omitted). He objects to Question No. 4 on the basis that it "calls for a legal conclusion and also indicates that consensual searches are in fact actually done consensually when in reality the

majority of the individuals who are searched consent to the search because they are intimidated by law enforcement." Objections at 1. The United States "does not object to the requested omission of the phrase 'but not more than fair'" from Question No. 2. Reply at 1 (emphasis omitted). The United States does "not object to the requested omission of the specified excerpt from" Question No. 4. Reply at 1. Accordingly, because the United States is willing to accommodate Goxcon-Chagal's objections, his objections to Question Nos. 2 and 4 are moot. The Court will overrule those objections as moot.

## II.   QUESTION NO. 29.

Question No. 29 provides:

As you know, the burden of proof in this case is on the government. The law requires us to prove that each defendant is guilty beyond a reasonable doubt; that is, a doubt based on reason and common sense. Does anyone feel that the government should carry a heavier burden, such as proof beyond all doubt, or proof beyond a shadow of a doubt?

Proposed Voir Dire ¶ 29, at 7. Goxcon-Chagal asserts that Question No. 29 "is an incomplete statement of the presumption of innocense [sic], burden of proof and reasonable doubt." Objections at 2. "Defense counsel requests that the entire second paragraph of the Tenth Circuit Pattern Criminal Jury Instruction No. 1.05 be read in its entirety rather than a portion being taken out of context." Objections at 2. The United States emphasizes that its Question No. 29 "is not whether or not [the jurors] understand the definition of reasonable doubt, it is whether they believe that the Government should have a higher burden." Reply at 1-2.

Instruction No. 1.05 is lengthy and states:

The government has the burden of proving the defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

-7-

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Tenth Circuit Pattern Jury Instructions Criminal § 1.05, at 10 (2011). The United States related that it intended to conduct voir dire for thirty minutes. See Tr. at 36:19-21 (Stanford). The purpose of voir dire is not to state lengthy legal propositions to the jury. The Court will instruct the jury later with the language in this instruction and then will give a separate copy of the instructions to each juror so that he or she will have a copy during jury deliberations. The United States wants the jurors to talk rather than to recite lengthy legal propositions to them. If Goxcon-Chagal wants to talk during voir dire rather than listen to the jurors, he may use that time to read jury instructions to them.

The Court agrees with the United States, given that the question does not refer to the presumption of innocence and otherwise provides an accurate summary of the applicable burden of proof the United States bears. See Tenth Circuit Pattern Jury Instructions Criminal § 1.05, at 10 ("A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case."). Goxcon-Chagal cites no authority for the proposition that, to ask the jurors a question about the burden of proof, the United States must read the entirety of a jury instruction to do so. It would be entirely appropriate for a questioner to discuss the presumption of innocence and the applicable burden of proof in two different questions. The concepts are related, but not identical. Furthermore, there is a significant potential that the questioner would not get a useful answer out of a juror if he or she tried to ask the juror about both

concepts at once.  The Court is not here to micro-manage the parties' voir dire questions when the

opposing side does not like them.  The Court takes the philosophy that parties should have, within

appropriate boundaries, significant freedom in approaching voir dire.  The Court is not the one

asking these questions, so there is a much lower likelihood that the jurors will attribute too much

significance to the matters the United States addresses.  In any case, the Court will instruct the jurors

on the presumption of innocence during the trial.  See Tenth Circuit Pattern Jury Instructions

Criminal § 1.05, at 10 ("The law does not require a defendant to prove his innocence or produce any

evidence at all.").  Accordingly, the Court will overrule the objection to Question No. 30.

### III.     QUESTION NO. 30.

Question No. 30 states:

> Is there anyone who believes that they would hold the government to a standard of
> evidence that could not possibly ever be met?  For example, does any juror believe
> that the government should prove a case the way it was done on a fictional television
> show, such as Crime Scene Investigation or Law and Order?  Does anyone believe
> that the technology available on such programs is also available in real life?

Proposed Voir Dire ¶ 30, at 7.  Goxcon-Chagal objects to Question No. 30, which he asserts "is an

attempt by the prosecution to exclude possible law enforcement deficiencies in the way this

investigation was conducted" and which he finds objectionable, because "[t]elevision shows are not

part of this case."  Objections at 2.  The United States acknowledges that "[t]elevision shows are not

part of this case," but argues that "it is common knowledge that television shows such as Crime

Scene Investigation and Law and Order have a profound effect on the public's perception of

evidence in a criminal trial."  Reply at 2.

The Court will overrule the objection.  From their experiences before they arrive in a

courtroom, jurors receive a great deal of information and develop many of their own impressions

about the way the criminal justice system operates.  Television shows can have a significant impact

-9-

on how they believe the criminal justice system does or should operate.  That includes their perceptions of how police officers should behave during an arrest and an investigation.  It is appropriate to probe jurors about their perceptions of the criminal justice system to make sure that they have an accurate understanding of how a criminal case operates.  Prosecutors believe that shows like <u>CSI</u> and <u>Law and Order</u> have made it more difficult for them to secure convictions, because prosecutors feel that jurors may expect police to solve crimes in one hour and use, in even routine cases, sophisticated scientific testing.[4]  Justice counsels that the Court allow the United States to explore this possible bias during voir dire.  The Court is not here to micro-manage the parties' voir dire questions, and this question appropriately targets a potential area that might reflect on the jurors' ability to follow the law and the Court's instructions.  The Court will overrule the objection.

## IV.    QUESTION NO. 31.

Question No. 31 provides: "What are some types of evidence you expect to see in a trial involving drug trafficking?"  Proposed Voir Dire ¶ 31, at 7.   Goxcon-Chagal objects to Question No. 31, which he asserts "calls for speculation by the jury as to what type of evidence will be expected."   Objections at 2.   The United States contends that Question No. 31 "calls for no speculation by the jury" and is instead "designed to provide insight into the expectations of potential jurors" to probe for "unreasonable expectations of evidence to be presented, such as whether DNA should be expected."  Reply at 2.

The question legitimately probes the jurors' thoughts on how they think a criminal case should play out.  The question could even yield favorable information for Goxcon-Chagal, as some

---

[4]The Court has been told that <u>CSI</u> episodes appear on Albuquerque, New Mexico television stations in the range of one-hundred times per work.

juror who does not like law enforcement may say that they expect to see evidence of police misconduct and dishonesty.  Open-ended questions can get the jurors talking, and the Court is willing to give the parties leeway, within the bounds of the law, on how to approach their voir dire. They are the ones presenting the case.  Thus, the Court will overrule the objection.  If the jurors start getting too far afield when the United States asks this question, Goxcon-Chagal may raise his concerns with the Court at that time.

## V.      QUESTION NOS. 36 AND 37.

Question No. 36 states: "If the government established the elements of each crime charged and met its burden of proof, would anybody have a problem holding each defendant responsible for his actions and returning a verdict of guilty?"  Proposed Voir Dire ¶ 36, at 8.  Goxcon-Chagal asserts that Question No. 36 is "a one-sided statement of the law" and asks the Court to substitute the following question: "If the government does not establish the elements of the crime charged and meet its burden of proof, would anybody have a problem finding the defendants not guilty." Objections at 2 (emphasis omitted).  The United States asserts that the question is proper, because "[t]here are individuals in society who may well feel guilty or unable to render a guilty verdict even if the Government has met its burden."  Reply at 3.  Question No. 37 provides: "If you heard the evidence and you felt one of the defendants was guilty, but you had a slight doubt but not a reasonable doubt of his guilt, would you be able to hold that defendant responsible for that crime?" Proposed Voir Dire ¶ 37, at 8 (emphasis omitted).  Goxcon-Chagal also asserts that Question No. 37 "is a one-sided statement of the law" and asks the Court to substitute an alternative question: "If you heard the evidence and felt the defendants might be guilty but had a reasonable doubt as to their guilt, would you be able to find them not guilty?"  Objections at 2 (emphasis omitted).  Regarding Question No. 37, the United States asserts that it is "a natural continuation of question 36 and seeks

to identify specific ethical biases by certain types of potential jurors." Reply at 3.

The Court will overrule the objections. The questions accurately reflect that the United States bears the burden on each element of the crime charged. The questions appropriately ask the jurors whether, even if the United States meets its burden, they would have trouble finding a defendant guilty. The question is also coming from the attorneys, not the Court, so the potential for the jurors attributing too much significance to the question is significantly reduced. Goxcon-Chagal cites no authority for the proposition that, when a question accurately reflects the applicable law, a party may not ask "one-sided" questions, or that the opposing party can dictate the particular phrasing of a given question. Objections at 2. A good attorney should ask questions that are one-sided in the sense that the questions provide the attorney with information that helps the attorney determine which jurors are unfavorable to his or her client without revealing which jurors are unfavorable to the opposing party. There is no rule of law requiring a party to ask jurors questions that will provide the opposing party with helpful information about jurors. Both sides have the opportunity to ask jurors questions, and it is not a party's obligation to help the opposing party during voir dire. Requiring both parties to approve the particular phrasing of questions, as long as the questions are not improper, is also an impractical course of action. If Goxcon-Chagal wants to use his proposed alternative questions, he can ask the jurors about them during his voir dire. The Court will overrule the objections to Question Nos. 36 and 37.

**IT IS ORDERED** that Defendant Rafael Goxcon-Chagal's Objections to Government's Voir Dire, filed August 2, 2012 (Doc. 87), are overruled. The Court will overrule in part some of the Objections as moot and will overrule the remaining objections.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Jon K. Stanford
Raul Torrez
  Assistant United States Attorneys
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*

Joseph W. Gandert
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

> *Attorneys for Defendant Rafael Goxcon-Chagal*

Joseph Riggs
Albuquerque, New Mexico

> *Attorney for Defendant Maria Vianey Medina-Copete*